UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

LYNNE AMMERMAN,

        Plaintiff,

    v.                               Case No.: 26-300

WESTON HARDWARE, INC.,

        Defendant.

---

## COMPLAINT

---

NOW COMES the Plaintiff, Lynne Ammerman, through her attorneys, Alan C. Olson & Associates, S.C., by Alan C. Olson, and, as and for a Complaint against the Defendant, Weston Hardware, Inc., alleges as follows:

### NATURE OF CASE

1.     Plaintiff, Lynne Ammerman ("Ammerman") alleges that Defendant, Weston Hardware, Inc., ("WHI") violated the Americans with Disabilities Act of 1990 ("ADA"), as amended by the Civil Rights Act of 1991, [42 U.S.C. § 2000, *et seq.*], and the ADA Amendments Act of 2008 [42 U.S.C. § 12101, *et seq.*]. Due to the severity of her Achilles heel and chronic asthma, Ms. Ammerman had great difficulty walking and breathing, which are major life activities. Defendant's management was aware of Ms. Ammerman's disabilities through observation, oral reports, and written records. Defendant failed to reasonably accommodate Ms. Ammerman's disabilities. Defendant was not willing to consider making changes in its ordinary work rules, facilities, terms, and conditions in order to enable Ms. Ammerman to work. Defendant failed to make

reasonable efforts to help Ms. Ammerman determine what specific accommodations were necessary. Defendant discriminated against Ms. Ammerman by failing to accommodate her disabilities, failing to engage in the interactive process, and terminating her employment.

## JURISDICTION AND VENUE

2.      Jurisdiction over Ms. Ammerman's claims under the Americans with Disabilities Act of 1990 ("ADA"), as amended by the Civil Rights Act of 1991, [42 U.S.C. § 2000, *et seq.*], and the ADA Amendments Act of 2008 [42 U.S.C. § 12101, *et seq.*], is conferred on this Court by 28 U.S.C. § 1331.

3.      The Western District of Wisconsin is the proper federal venue for this action pursuant to 28 U.S.C. § 1391, in that Defendant operates within the Western District and the unlawful actions occurred in the Western District.

## CONDITIONS PRECEDENT

4.      All conditions precedent to this action within the meaning of Rule 9(c), Fed. R. Civ. Pro., have been performed or have otherwise occurred.

## JURY DEMAND

5.      Ms. Ammerman demands that her case be tried to a jury of her peers.

## PARTIES

6.      Plaintiff, Lynne Ammerman, is an adult citizen of the United States, residing at 810 Kent Street, Wausau, WI 54403.

7.      Defendant, Weston Hardware, Inc. is a corporation organized and existing under the laws of the State of Wisconsin and operates an Ace Hardware store at 2606 Schofield Ave., Weston, WI 54476.

2

**OPERATIVE FACTS**

8.      In or around October 2023, Ammerman commenced employment with Defendant as a cashier.

9.      In April 2024, Ms. Ammerman suffered an Achilles tendon injury in her home and was additionally diagnosed with Haglund deformity with diseased bone.

10.      Ms. Ammerman tried to avoid surgery with alternative medical treatments.

11.      Ms. Ammerman was able to work all of her assigned shifts, albeit with some difficulty getting around while using crutches, wearing a boot, or riding a scooter to her register where she utilized a stool.

12.      Ms. Ammerman provided Store Manager, Ron Geiger, with her medical restrictions.

13.      Tracey Wisotzke, Supervisor, was visibly annoyed by Ms. Ammerman's need for accommodation and took steps to interfere with Ms. Ammerman.

14.      At the end of summer 2024, Ms. Wisotzke interfered with the assembly and delivery of a pergola that Ms. Ammerman bought from Defendant's store.

15.      On November 7, 2024, Ms. Ammerman had Achilles tendon surgery which normally involves a healing period of 9 to 12 months. Following her surgery, Ms. Ammerman continued to need accommodations by Defendant.

16.      Michelle Zajchek, Supervisor, was annoyed that Ms. Ammerman needed to take a 15-minute break every two hours to avoid blood clots—so much so that she swore at Ms. Ammerman.

17.      When Ms. Ammerman brought to Mr. Geiger's attention each of the three times that Ms. Zajchek swore at her, he took no remedial action.

3

18. Ms. Zajchek did not treat non-disabled employees in the same harsh manner when they took a 20-minute cigarette break, or extended their break by 5 minutes.

19. Ms. Ammerman also suffers from chronic asthma, which is triggered by scented chemicals.

20. During her pre-employment interview, Ms. Ammerman told Store Manager, David Huth, that fragrant chemicals can trigger her asthma.

21. When Amy Rustick sprayed scented cleaning solution on all of the cashier stations, it triggered Ms. Ammerman's asthma. Ms. Ammerman asked Ms. Wisotzke and Ms. Rustick to please not spray the scented cleaner because it triggered her asthma.

22. When Ms. Wisotzke and Ms. Rustick continued to use the spray a third time on January 5, 2025, Ms. Ammerman suffered a full-blown asthma attack, causing her to turn purple. Defendant's Manager, Todd Burkhardt, had Ms. Ammerman sit in the breakroom alone, instead of calling for medical help.

23. On January 6, 2025, Mr. Huth told Ms. Ammerman he had no knowledge of the prior day's events because Mr. Burkhardt had not filled out a report or even mentioned it. Mr. Huth instructed Ms. Rustick and the rest of the cashier staff not to use the scented cleaning solution.

24. In direct violation of Mr. Huth's instruction, at 2:00 p.m. on January 6, 2025, Ms. Rustick said in the presence of employees and staff, "is anyone else going to have an asthma attack?" and then sprayed the scented cleaning solution once again. Ms. Rustick continued to use the same cleaner repeatedly with impunity.

4

25.     On February 17, 2025, Ms. Wisotke told Ms. Ammerman she could not take her 15-minute break at 6:00 p.m., because there were two coffee urns that needed to be emptied and rinsed—a task that takes a couple minutes.

26.     In response to the request by Ms. Ammerman's doctor to provide a break as an accommodation, Mr. Geiger instructed Ms. Wisotke and Ms. Zajchek to schedule Ms. Ammerman to start at 3:00 p.m. and cut her hours so she could not take the break.

27.     Ms. Ammerman offered to start 30 minutes earlier to allow for the break at 5:30 instead of 6:00 p.m. Instead, Defendant cut Ms. Ammerman's hours to avoid giving her the break.

28.     There was no legitimate reason to cut Ms. Ammerman's hours because during February and March 2025, Defendant was advertising for a Cashier.

29.     On February 17, 2025, someone sprayed the scented cleaning solution on Ms. Ammerman's work area and then placed an open bottle of the chemical under her register out of sight. Ms. Ammerman took the bottle to Mr. Geiger and asked why they were still using the chemicals that Mr. Huth said were not allowed. Mr. Geiger made the bizarre excuse that it could have been a customer's return, but gave no explanation as to why the bottle was open and with no receipt.

30.     On February 17, 2025, when Ms. Ammerman asked Mr. Geiger to do something to stop the harassment, he became argumentative and claimed there was nothing he could do. Ms. Ammerman reasonably responded that she had had enough and was going to contact the EEOC.

31.     At the end of February 2025, Ms. Selle posted a statement in Defendant's common area, "Per OSHA" that all employees were required to initial.

32. During March 2025, Ms. Zjachek identified Ms. Ammerman's workdays on the employee work schedule calendar for the days that scented cleaners could not be used.

33. On March 15, 2025, Ms. Ammerman overheard Ms. Wisotzke tell Marilyn Tryba that she had opened the cleaning solution and put it under Ms. Ammerman's register a half hour before she started. When Ms. Tryba noticed Ms. Ammerman, she became startled and warned Ms. Wisotzke, "that's interesting you'll have to fill me in at another time". Ms. Ammerman looked at Ms. Wisotzke and said, "Hello Tracey", which prompted Ms. Wisotzke to abruptly leave.

34. During March of 2025, Heather Selle, Assistant Manager, had Ms. Ammerman identify the date and time the scented bottle was placed under her register on February 15, 2025. Ms. Ammerman told Ms. Selle she was disappointed that Mr. Geiger had not checked the cameras three feet from her register to confirm that it was Ms. Wisotke who placed the bottle there. Ms. Selle failed to take any remedial action and when Ms. Ammerman said she was ready to go to the EEOC with her complaints, Ms. Selle responded: "you have to do what you have to do."

35. On Tuesday, March 18, 2025 at 7:05 p.m., Mr. Geiger told Ms. Ammerman her medically prescribed use of a scooter was "excessive". Ms. Ammerman documented this exchange and Mr. Geiger did not refute it.

36. During April 2025, Mr. Geiger falsely represented to OSHA that Defendant had never used scented cleaner.

37. When Ms. Ammerman parked in a handicapped spot with her placard, her car was vandalized and the vandal etched a smiley face into the paint. Ms. Ammerman

6

told Mr. Geiger she suspected the vandal was an employee who did not like Ms. Ammerman's needs for accommodation.

38.    Mr. Geiger refused to check Defendant's security camera to determine who had vandalized Ms. Ammerman's vehicle.

39.    Defendant refused Ms. Ammerman's request to park close to the building as an accommodation for her disability.

40.    Defendant refused Ms. Ammerman's request to allow her care assistants to enter the building as an accommodation for her disability.

41.    Defendant refused Ms. Ammerman's request to allow her care assistants to park in customer parking as an accommodation for her disability, after the store was closed and the lot was empty.

42.    On April 22, 2025, Ms. Ammerman's doctor provided Ace with a medical restriction/accommodation request stating that her asthma is triggered by scented products and cleaning agents.

43.    On April 23, 2025, Mr. Geiger terminated Ms. Ammerman's employment over the phone, stating only that her services were "no longer needed".

44.    Prior to the termination, Mr. Huth had identified Ms. Ammerman as an "exemplary employee", resulting in pay raises and two bonuses.

45.    Mr. Geiger had been supportive of Ms. Ammerman until she complained that she was being harassed. He told Ms. Ammerman he wished all of the cashiers performed like her, exclaiming she was excellent with customers and did everything correctly. Mr. Geiger told Ms. Ammerman he was impressed that she had never had a complaint about her or been summoned to his office to deal with a problem.

7

**FIRST COUNT**
**AMERICANS WITH DISABILITIES ACT**
**DISABILITY DISCRIMINATION**

46.    As and for a first Count, Ammerman re-asserts the allegations recited above and fully incorporates those paragraphs herein by reference.

47.    The allegations more particularly described above constituted violations of the ADA, the Civil Rights Act of 1991, and the ADA Amendments Act of 2008, when Defendant routinely targeted and treated Ms. Ammerman less favorably than comparably situated, non-disabled employees, failed to accommodate her disabilities, and terminated her employment, causing her to suffer compensatory damages for losses of wages, benefits, expenses, insurance, emotional pain, suffering, humiliation, embarrassment, and mental anguish, all to her damage.

**SECOND COUNT**
**AMERICANS WITH DISABILITIES ACT**
**RETALIATION**

48.    As and for a second Count, Ammerman re-asserts the allegations recited above and fully incorporates those paragraphs herein by reference.

49.    The allegations more particularly described above constituted violations of the ADA, the Civil Rights Act of 1991, and the ADA Amendments Act of 2008, when Defendant targeted Ms. Ammerman for engaging in protected activity related to her disabilities, and terminated Ms. Ammerman's employment, causing her to suffer compensatory damages for losses of wages, benefits, expenses, insurance, emotional pain, suffering, humiliation, embarrassment, and mental anguish, all to her damage.

Wherefore Plaintiff, Lynne Ammerman, demands that judgment be entered and Defendant ordered to provide the following remedies:

A.      Compensatory damages for losses of wages, benefits, and expenses;

B.      Reinstatement and/or damages for monetary losses and expenses including front pay;

C.      Costs, disbursements, prejudgment interest, actual attorney's fees and expert witness fees incurred in prosecuting these claims, together with interest on said fees;

D.      Punitive damages to punish and deter Defendant from engaging in such unlawful conduct now and in the future; and

E.      Such other relief as the Court deems just and equitable.

Dated this 6th day of April, 2026.

*Electronically signed by Alan C. Olson*
Alan C. Olson, SBN: 1008953
Nicholas O. Yurk, SBN: 1095278
Attorneys for Plaintiff
Alan C. Olson & Associates, S.C.
2880 S. Moorland Rd.
New Berlin, WI  53151
Telephone: (262) 785-9606
Fax: (262) 785-1324
Email: AOlson@EmployeeAdvocates.com